THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:02-cr-00004-MR-4

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| HARRY NOLAN MOODY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's Second *Pro Se* Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 316]. The Government opposes the Defendant's motion. [Doc. 318].

**I.  BACKGROUND**

Between July and October 2001, the Defendant Harry Nolan Moody operated a clandestine methamphetamine laboratory in Henderson County, North Carolina. [Doc. 287: PSR at ¶ 8]. The Defendant used equipment and supplies that were stolen from drug stores, convenience stores, auto parts stores, grocery stores, and Walmart. [Id.]. The Defendant worked together with his wife, his daughter, and his daughter's boyfriend to manufacture methamphetamine. [Id.]. The Defendant's wife, Donna, at times wanted to stop cooking methamphetamine, but the Defendant would physically abuse

her. [Id.]. The lab produced between 5 and 6 ounces of methamphetamine. [Id.].

Police discovered a second methamphetamine lab at the Defendant's residence in January of 2002. [Id. at ¶ 10]. Police concluded that this second lab was capable of producing 29.52 grams of methamphetamine. [Id.]. In total, more than 2,000 grams of methamphetamine were reasonably foreseeable to the Defendant. [Id. at ¶ 11].

The Defendant had an extensive history of committing crimes dating back to the early 1970s. [Id. at ¶¶ 31-94]. His most serious convictions were three convictions for breaking and entering and two convictions for assault inflicting serious injury. [Id. at ¶¶ 49, 52, 57, 74, 82].

In January 2002, a federal grand jury indicted the Defendant and charged him with possession of pseudoephedrine and ethyl ether with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841; conspiracy to possess pseudoephedrine and ethyl ether with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 846; and conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846. [Doc. 6: Indictment]. The Indictment alleged that these offenses involved more than 50 grams of methamphetamine and that the

Defendant committed these offenses after a conviction for a felony drug offense. [Id.]. The United States also filed an information under 21 U.S.C. § 851, notifying the Defendant and this Court that it intended to seek an enhanced penalty because the Defendant had previously been convicted of a felony drug offense. [Doc. 137: § 851 Notice]. In July 2002, a jury found the Defendant guilty of conspiracy to manufacture methamphetamine and found that the offense involved more than 50 grams of methamphetamine.[1] [Doc. 154: Jury Verdict].

This Court's probation office submitted a presentence report in preparation for sentencing. The Defendant was determined to be a career offender based on his prior assault convictions. [Doc. 287: PSR at ¶ 26]. The adjusted offense level (37) generated by application of the career offender guideline was only one level higher than the offense level (36) generated by the drug trafficking guideline for the amount of methamphetamine involved. [See id. at ¶¶ 25-26]. Because the Defendant was a career offender, his criminal history category was determined to be VI. However, the Defendant also had a total of 21 criminal history points, which by itself established a

---

[1] The other offenses charged in the Indictment were dismissed on motion of the United States. [See Doc. 208: Judgment at 1].

3

criminal history category of VI. Based on a total offense level of 37 and a criminal history category of VI, the probation officer determined that the Sentencing Guidelines called for a sentence between 360 months and life in prison. [Id. at ¶¶ 28, 97, 156]. In March 2003, this Court sentenced the Defendant to a term of 360 months in prison, which was at the low end of this Guidelines range. [Doc. 208: Judgment at 2].

The Defendant is currently housed at FCI Edgefield[2] and has approximately 270 months of credited time. [See Doc. 318-1]. The Defendant has incurred only two minor disciplinary citations while incarcerated, and he has completed 29 educational or work programs and obtained his GED while in prison. [Id.].

In May 2020, the Defendant filed his first motion for compassionate release, arguing that his age and underlying health conditions placed him at a higher risk for severe illness from COVID-19, and that his particular vulnerability to the illness was an extraordinary and compelling reason for an immediate sentence reduction to time served. [Doc. 302]. In June 2020, the Court denied the Defendant's motion, concluding that the Defendant had failed to establish an extraordinary and compelling reason for his release,

---

[2] See https://www.bop.gov/inmateloc/ (last accessed Oct. 15, 2021).

4

Case 1:02-cr-00004-MR   Document 320   Filed 10/26/21   Page 4 of 11

and that consideration of the § 3553(a) factors weighed in favor of his continued incarceration. [Doc. 310].

In August 2021, the Defendant filed the present motion, again seeking compassionate release. [Doc. 316]. For grounds, the Defendant argues that if he were sentenced today, he would not be classified as a career offender and would receive a shorter sentence. [Id. at 1-3].

## II.  DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government does not dispute that the Defendant has sufficiently exhausted his administrative remedies with BOP by requesting compassionate release from the Warden. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. Specifically, the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or

6

75% of his term of imprisonment, whichever is less.  Id., § 1B1.13 cmt. n.1(B).  Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification.  28 U.S.C. § 994(t).

The policy statement set forth in § 1B1.13, however, is not binding on this Court.  Section 1B1.13 was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release.  In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence.  See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)").  Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)).  Nevertheless, as the Court in McCoy recognized, this policy statement "remains helpful guidance even when motions are filed by

7

defendants." Id. at 282 n.7.  The Defendant bears the burden of establishing that he is eligible for a sentence reduction.  United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

In support of his request for compassionate release, the Defendant argues that if sentenced today, he would not be classified as a career offender and would receive a lower sentence.  Specifically, the Defendant contends that his prior assault offenses are no longer considered "crimes of violence" under the career offender Guideline and thus cannot support his classification as a career offender.  [Doc. 316 at 2].

Even assuming that the Defendant is correct that he would not be classified as a career offender if sentenced today, this fact alone would not automatically entitle the Defendant to a compassionate release.  In McCoy, the Fourth Circuit held only that the district courts had discretion to consider "the severity of the defendants' ... sentences and the extent of the disparity between the defendants' sentences and those provided for under [current law]," when deciding a motion for compassionate release. 981 F.3d at 286. "Nothing in McCoy, however, requires the court to reduce a defendant's sentence once the defendant shows that new statutory or case law would

8

have benefitted the defendant, if such law had existed at the time of the defendant's sentencing." United States v. Spencer, 521 F. Supp. 3d 606, 610 (E.D. Va.), aff'd, 853 F. App'x 833 (4th Cir. 2021). Rather, the Court must decide whether a reduction in sentence is warranted "based on a 'full consideration of the Defendant's individual circumstances.'" Id. (quoting McCoy, 981 F.3d at 286). Such circumstances include the length of time already served, any rehabilitative efforts made while incarcerated, the defendant's prior criminal history, and the defendant's age at the time of the offense. McCoy, 981 F.3d at 286.

Here, considering the Defendant's argument regarding his career offender status, along with the sentencing factors in 18 U.S.C. § 3553(a), the Court concludes that the Defendant has failed to show extraordinary and compelling reasons for a compassionate release. The Defendant has an extensive criminal history, including multiple convictions for drug possession, assault, breaking & entering/burglary-type offenses, escaping from jail or prison, and revocations of probation. [See Doc. 287: PSR at 8-23]. He was designated as a "career offender" under U.S.S.G. § 4B1.1, but he did not need that guideline to increase his Criminal History Category to VI, as his criminal history score was 21, more than 60% over what he needed to obtain

9

the highest category without application of the career offender guideline. [Id. at 23]. In addition, Defendant's career offender designation only increased his offense level by one level. This yields a sentencing disparity that is a far cry from that found in McCoy. Moreover, the Defendant's offense of conviction involved the operation of two separate homemade methamphetamine laboratories that produced a significant amount of methamphetamine. [Id. at 5-6]. The Defendant has made significant efforts at rehabilitation while incarcerated, including participating in the mental health companion program. [See Doc. 318-1]. However, considering the totality of the circumstances, the Court concludes that a reduction of sentence would not reflect the seriousness of the Defendant's offense, would not promote respect for the law, would not provide just punishment, would not afford adequate deterrence, and would not protect the public from the Defendant's further crimes.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's Second Motion for Compassionate Release is denied.

10

Case 1:02-cr-00004-MR   Document 320   Filed 10/26/21   Page 10 of 11

**IT IS, THEREFORE, ORDERED** that the Defendant's Second *Pro Se* Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 316] is **DENIED**.

**IT IS SO ORDERED.**

Signed: October 26, 2021

Martin Reidinger
Chief United States District Judge