IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:02CR4

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) |
| HARRY NOLAN MOODY, | ) |
| | ) |
| Defendant. | ) |

## UNITED STATES' SUPPLEMENTAL RESPONSE OPPOSING MOTION FOR COMPASSIONATE RELEASE

Defendant Harry Nolan Moody moves this Court to grant him compassionate release under 18 U.S.C. § 3582(c)(1)(A). Because Moody has not identified any extraordinary and compelling reasons warranting his release and the sentencing considerations described in 18 U.S.C. § 3553(a) weigh against any sentence reduction, the United States opposes his compassionate release.

## BACKGROUND AND PROCEDURAL HISTORY

Between July and October 2001, Moody operated a clandestine methamphetamine laboratory in Henderson County, North Carolina. WDNC Case No. 1:02CR4, Doc. 287 ¶ 8. Moody used equipment and supplies that were stolen from drug stores, convenience stores, auto parts stores, grocery stores, and Walmart. *Id.* Moody worked together with his wife and daughter and his

daughter's boyfriend to manufacture methamphetamine. *Id.* Moody's wife, Donna, at times wanted to stop cooking methamphetamine, but Moody would physically abuse her. *Id.* The lab produced between 5 and 6 ounces of methamphetamine. *Id.*

Police discovered a second methamphetamine lab at Moody's residence in January of 2002. *Id.*, Doc. 287 ¶ 10. Police concluded that this second lab was capable of producing 29.52 grams of methamphetamine. *Id.* This Court's probation office concluded that in total, more than 2,000 grams of methamphetamine were reasonably foreseeable to Moody. *Id.*, Doc. 287 ¶ 11.

At the time Moody committed this offense, Moody had a long and nearly unbroken history of committing crimes, from 1971 through 2002, except when he was in prison. *Id.*, Doc. 287 ¶¶ 31–94. Moody's most serious convictions were three convictions for breaking and entering and two convictions for assault inflicting serious injury. *Id.*, Doc. 287 ¶¶ 49, 52, 57, 74, 82.

A federal grand jury indicted Moody and charged him with possession of pseudoephedrine and ethyl ether with intent to manufacture methamphetamine, 21 U.S.C. § 841; conspiracy to possess pseudoephedrine and ethyl ether with intent to manufacture methamphetamine, 21 U.S.C. § 846; and conspiracy to manufacture and distribute methamphetamine, 21 U.S.C. § 846. *Id.*, Doc. 6. The indictment alleged that these offenses involved more than 50 grams of a substance or mixture containing methamphetamine and that Moody committed these offenses after conviction for a felony drug offense. *Id.* The United States also filed an information under 21 U.S.C. § 851, notifying Moody and this Court that it intended to seek an

enhanced penalty because Moody had previously been convicted of a felony drug offense. *Id.*, Doc. 137. A jury found Moody guilty of conspiracy to manufacture methamphetamine and found that the offense involved more than 50 grams of a mixture or substance containing methamphetamine. *Id.*, Doc. 287 ¶ 3.

This Court's probation office submitted a presentence report and determined that Moody was a career offender based on his prior assault convictions. *Id.*, Doc. 287 ¶ 26. The adjusted offense level generated by application of the career-offender guideline — 37 — was only one level higher than the offense level generated by the drug-trafficking guideline based on a drug quantity of 2.16 kilograms of a methamphetamine mixture. *See id.*, Doc. 287 ¶¶ 17, 25–26. The probation office determined that the Sentencing Guidelines called for a sentence of between 360 months and life in prison based on a total offense level of 37 and a criminal-history category of VI. *Id.*, Doc. 287 ¶¶ 28, 97, 156.

At sentencing, this Court declined to adopt the drug quantity suggested in the presentence report and found instead that at least 50 grams of actual methamphetamine were reasonably foreseeable to Moody. *Id.*, Sentencing Tr. at 11. This Court sentenced Moody to 360 months in prison. *Id.*, Doc. 208 at 2.

The probation office reports that Moody has 269 months of credited time in the Bureau of Prisons. Moody has incurred two disciplinary citations — one in 1993 and one in 2000 for non-violent infractions. He has completed 29 educational or work programs and obtained his GED while in prison.

3

In January of 2020, Moody submitted a request for compassionate release. *Id.*, Doc. 302-2 at 4. The warden of his Bureau of Prisons facility denied that request in March of 2020. *Id.*, Doc. 302-2 at 6. Moody asked this Court to grant him compassionate release because if he were sentenced today, he would not be classified as a career offender and would receive a shorter sentence. *Id.*, Doc. 316 at 1–3. This Court denied Moody's motion in October of 2021, finding that the guideline range that would have applied in the absence of Moody's career-offender designation was only one offense level below the career-offender offense level and that this difference did not amount to an extraordinary and compelling reason to grant compassionate release. *Id.*, Doc. 320 at 10. The Court also found that a reduction in Moody's sentence would not be consistent with the sentencing factors described in 18 U.S.C. § 3553(a), including the seriousness of Moody's offense and the need to promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. *Id.*

Moody appealed, and in July of 2022, the Fourth Circuit vacated this Court's order. *Id.*, Doc. 327. The Fourth Circuit noted that when this Court sentenced Moody, it did not adopt the drug quantity suggested in Moody's presentence report and adopted instead a drug quantity of at least 50 grams of actual methamphetamine. *Id.*, Doc. 327 at 3. Using that drug quantity would result in a greater disparity between the career-offender guideline range considered by this Court when it originally sentenced Moody and the range that would apply today, and because this Court mistakenly concluded that the offense-level disparity would

4

be only one offense level, the Fourth Circuit vacated this Court's order denying Moody's motion for compassionate release. *Id.*, Doc. 327 at 4. The Fourth Circuit directed this Court on remand to (1) review Moody's sentencing transcript to determine the drug type and quantity attributable to Moody; and (2) reevaluate the impact of Moody's career-offender designation on the guideline range that would apply today without that designation. *Id.*

## ARGUMENT

**This Court should deny Moody's motion for compassionate release because he has not identified extraordinary and compelling reasons for a reduction in his sentence and the section 3553(a) factors do not weigh in favor of a sentence reduction.**

Moody has not alleged that he satisfies any of the criteria for compassionate release authorized in Sentencing Guidelines § 1B1.13, nor has he alleged any disparity between the sentence he received and the sentence "provided for under the First Step Act." *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020). Instead, he asks this Court to exercise its discretion to grant him compassionate release because if sentenced today, he would not be classified as a career offender and he would have received a lower sentence. In particular, Moody asserts that his prior assault offenses are no longer considered "crimes of violence" under the career-offender guideline and cannot support his classification as a career offender. WDNC Case No. 1:02cr4, Doc. 316 at 2. Moody also asserts that this Court mistakenly held him responsible for at least 50 grams of actual methamphetamine when the jury's verdict found that at least 50 grams of a methamphetamine mixture were reasonably foreseeable to him. *Id.*, Doc. 330 at 3–4. Accordingly, Moody

5

argues, if he were sentenced today, he would be subject to a guideline range of between 120 and 150 months, well below the 360-month-to-life range that he faced when he was sentenced. *Id.*, Doc. 330 at 4.

For many of the same reasons this Court articulated when denying Moody's motion for compassionate release in its earlier order, this Court should again deny Moody's motion for discretionary and extraordinary sentencing relief. As an initial matter, this Court should decline to recalculate Moody's guideline range based on the discrepancy between the drug quantity and type reflected on the jury's verdict form (50 grams of a methamphetamine mixture) and the drug quantity and type found by this Court during Moody's sentencing hearing (50 grams of actual methamphetamine). When a prisoner seeks the kind of relief from a sentence that Congress has made "available in a precisely delineated class of cases" through a different statute, compassionate release is not available. *See McCoy*, 981 F.3d at 287. Compassionate release is reserved for "the truly exceptional cases that fall within no other statutory category." *Id.* at 288.

Congress has prescribed several "statutory categor[ies]" separate from compassionate release for litigating the propriety of sentencing decisions by district courts. The "main event" is the original criminal proceeding, *McFarland v. Scott*, 512 U.S. 849, 859 (1994), and several statutes ensure that both parties have an opportunity to present arguments about the proper calculation of the sentencing guidelines and the proper sentence. *See, e.g.*, 18 U.S.C. §§ 3552, 3553, 3582; Fed. R. Crim. P. 32. Congress has also provided for a direct appeal under 18 U.S.C.

§ 3742(a)(2) of sentences "imposed as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(2).

Beyond a direct appeal, Congress has provided an avenue for collaterally attacking a "sentence" after a conviction has become final under 28 U.S.C. § 2255. The remedy the statute describes is broad, allowing the court to "resentence" the prisoner "or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). It is under this statute that Congress has given a federal prisoner the opportunity to launch a "collateral attack to any aspect of his conviction or sentence." *Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562, 568 (4th Cir. 2021). If the "remedy by motion" under § 2255 is "inadequate or ineffective to test the legality of his detention," moreover, an "application for a writ of habeas corpus" is available. 28 U.S.C. § 2255(e); *see* 28 U.S.C. § 2241. Each of these statutes for correcting error is subject to its own well-established set of limitations, *see Calderon v. Thompson*, 523 U.S. 538, 554 (1998), making collateral relief "available in a precisely delineated class of cases," *McCoy*, 981 F.3d at 287. The limitations are generally more substantial the more distant they are from the original sentencing proceeding. *See Lester v. Flournoy*, 909 F.3d 708, 710 (4th Cir. 2020).

Because Congress has enacted separate statutes for correcting errors at sentencing, "a claim of errors in the original sentencing is not itself an extraordinary and compelling reason for release" under the compassionate-release statute, 18 U.S.C. § 3582(a)(1). *United States v. Martin*, 21 F.4th 944, 946 (7th Cir.

2021); *United States v. Holmes*, 2022 WL 3657180, *2 (3d Cir. 2022) (unpublished decision); *United States v. McKinnie*, 24 F.4th 583, 586 (6th Cir. 2022); *United States v. Reedy*, No. 21-10895, 2022 WL 1439665, at *1 (5th Cir. 2022) (unpublished decision); *United States v. Mata-Soto*, 861 F. App'x 251, 255 (10th Cir. 2021) (unpublished decision); *United States v. Fine*, 982 F.3d 1117, 1118 (8th Cir. 2020); *see also United States v. Amato*, 48 F.4th 61, 65 (2d Cir. 2022). "There is nothing 'extraordinary,' in the words of the Seventh Circuit, about "a contention that the sentencing judge erred in applying the Guidelines"; these contentions "are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255." *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022). Boyd's claim of an error related to the district court's drug-quantity determination places his motion in a "separate categor[y]" from those in which the compassionate-release provision "operate[s]." *McCoy*, 981 F.3d at 288.

That Moody would not be classified as a career offender if he were sentenced today is also not an extraordinary and compelling circumstances warranting compassionate release because non-retroactive changes to the Sentencing Guidelines are not extraordinary or compelling. A non-retroactive change in the law does not create an error, and the background presumption related changes to the law is that they do not affect past defendants' convictions or sentences. *See*, *e.g.*, 1 U.S.C. §§ 109, 110 (providing that repeal or revision of statutes does not affect criminal liability for convictions or offenses committed prior to the repeal or revision

date). Additionally, post-sentencing changes in the law ordinarily create disparities between those sentenced before and those sentenced after. Far from being extraordinary, they are instead "the ordinary practice." *See Dorsey v. United States*, 567 U.S. 260, 280–81 (2012) (explaining that "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences").

It is also likely that the disparity in the sentence he would receive today and the sentence he is currently serving is not as great as Moody suggests. Even if Moody had not formally been classified as a career offender under section 4B1.2 of the Sentencing Guidelines, his extensive and unbroken pattern of criminal offenses would have justified an upward departure based on the seriousness of Moody's criminal history and the inadequate representation of the seriousness of his criminal history or likelihood of recidivism in the resulting guideline range. *See* U.S.S.G. § 4A1.3. Moody accrued 21 criminal-history points — well above the 13-point threshold for criminal-history category VI. And several of Moody's most serious prior offenses, including three breaking-and-entering offenses, did not garner criminal-history points because of their age. *See* WDNC Case No. 1:02CR4, Doc. 287 ¶¶ 31, 49, 52, 57. In the light of Moody's extraordinary criminal history, the United States likely would have sought an upward departure and this Court likely would have granted a departure under section 4A1.3, lessening significantly the disparity between the sentence Moody received and the sentence this Court would have imposed without the formal career-offender designation — whether or

9

not it used a drug quantity of 50 grams of actual methamphetamine or 50 grams of a methamphetamine mixture.

Additionally, this Court should decline to reduce Moody's sentence based on the sentencing considerations described in 18 U.S.C. § 3553(a). Moody's offense conduct was serious, presenting a danger to the public and involving a large quantity of methamphetamine. While Moody has served a significant amount of time in prison and performed relatively well, his 30 educational courses and work assignments are not extraordinary for the amount of time he has been in the Bureau of Prisons. And given Moody's long-term and persistent criminal misconduct through decades of his life (from 17 years old until 49 years old), his relatively advanced age of 69 does not suggest that he is no longer a risk of offending again, as it might with others.

This Court should also reject Moody's suggestion that his sentence creates unwarranted sentence disparities because his co-defendant, who held an aggravated role within the conspiracy, received a lower sentence. *See* WDNC Case No. 1:02CR4, Doc. 330 at 9–10. Section 3553(a)(6) "aims 'to promote national uniformity in sentencing rather than uniformity among codefendants in the same case.'" *United States v. Patterson*, 755 F. App'x 238, 241 (4th Cir. 2018) (quoting *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006)). Additionally, Moody's co-defendant, Walter West, was subject to a criminal-history category of II when he was sentenced and did not, therefore, have a criminal history warranting the kind of lengthy sentence that Moody received. *See* WDNC Case No. 1:02CR4, Walter

10

Case 1:02-cr-00004-MR   Document 334   Filed 11/17/22   Page 10 of 11

West Sentencing Tr. at 23–24. The nature and circumstances of Moody's offense, Moody's history and characteristics, the need for deterrence, the need to protect the public, and the need for just punishment all weigh in favor of denying Moody any reduction in his sentence.

## CONCLUSION

Moody has not identified any extraordinary or compelling reason for his compassionate release. Even if this Court is authorized to reduce Moody's sentence, the 18 U.S.C. § 3553(a) sentencing considerations weigh against his early release, and the United States respectfully requests that this Court deny Moody's motion.

RESPECTFULLY SUBMITTED, this the 17th day of November, 2022.

DENA J. KING
UNITED STATES ATTORNEY

s/Amy E. Ray
Assistant United States Attorney
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Telephone: (828) 271-4661
Fax: (828) 271-4670
E-mail: Amy.Ray@usdoj.gov