# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CRIMINAL CASE NO. 1:02-cr-00004-MR-4

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| HARRY NOLAN MOODY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on remand from the United States Court of Appeals for the Fourth Circuit [Doc. 327] for further consideration of the Defendant's Second *Pro Se* Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 316], as supplemented by counsel [Docs. 330, 335]. The Government continues to oppose the Defendant's request. [Doc. 334].

## I. BACKGROUND

Between July and October 2001, the Defendant Harry Nolan Moody operated a clandestine methamphetamine laboratory in Henderson County, North Carolina. [Doc. 287: PSR at ¶ 8]. The Defendant used equipment and supplies that were stolen from drug stores, convenience stores, auto parts stores, grocery stores, and Walmart. [Id.]. The Defendant worked together

with his wife, his daughter, and his daughter's boyfriend to manufacture methamphetamine. [Id.]. The Defendant's wife, Donna, at times wanted to stop cooking methamphetamine, but the Defendant would physically abuse her in order to continue the enterprise. [Id.].

The Defendant had an extensive history of committing crimes dating back to the early 1970s. [Id. at ¶¶ 31-94]. His most serious convictions were three convictions for breaking and entering, one conviction for assault on a law enforcement officer, and two convictions for assault inflicting serious injury. [Id. at ¶¶ 49, 52, 57, 74, 79, 82].

In January 2002, a federal grand jury indicted the Defendant and charged him with possession of pseudoephedrine and ethyl ether with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841; conspiracy to possess pseudoephedrine and ethyl ether with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 846; and conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846. [Doc. 6: Indictment]. The United States also filed an information under 21 U.S.C. § 851, notifying the Defendant and this Court that it intended to seek an enhanced penalty because the Defendant had previously been convicted of a felony drug offense. [Doc. 137: § 851 Notice].

In July 2002, a jury found the Defendant guilty of conspiracy to manufacture methamphetamine and specifically found that the Defendant was responsible for more than 50 grams of a mixture or substance containing a detectable amount of methamphetamine.[1] [Doc. 154: Jury Verdict].

This Court's probation office submitted a presentence report (PSR) in preparation for sentencing. The PSR contained various, and sometimes contradictory, information regarding the quantity of methamphetamine for which the Defendant was responsible. For example, the PSR noted that one of the labs operated by the Defendant produced approximately one ounce of methamphetamine per week for approximately 16 weeks. [Doc. 287: PSR at ¶ 8]. The PSR then stated that this lab yielded "approximately 5 to 6 [sic] ounces of methamphetamine."[2] [Id.]. The supplies found at the lab, however, were calculated to be sufficient to produce 4.7 pounds (2,131.92 grams) of methamphetamine. [Id. at ¶ 11; Tr. at 6]. Based on that information, the probation officer determined that the Defendant was responsible for 2,151.44 grams of a methamphetamine mixture, resulting in

---

[1] The other offenses charged in the Indictment were dismissed on motion of the United States. [See Doc. 208: Judgment at 1].

[2] Sixteen ounces equals approximately 453 grams. Six ounces equals approximately 170 grams.

a base offense level of 34. [Id. at ¶ 17]. A two-level enhancement was added because the offense involved the discharge of a toxic substance into the environment, which would have resulted in an adjusted level of 36. [Id. at ¶¶ 18, 25]. The Defendant, however, was determined to be a career offender based on his prior convictions, resulting in an adjusted offense level and a total offense level of 37. [Id. at ¶ 26]. Because the Defendant was a career offender, his criminal history category was determined to be VI. [Id. at ¶¶ 26, 97]. However, the Defendant also had a total of 21 criminal history points, which by itself established a criminal history category of VI. [Id. at ¶ 97]. Based on a total offense level of 37 and a criminal history category of VI, the probation officer determined that the Sentencing Guidelines called for a sentence between 360 months and life in prison. [Id. at ¶ 156].

The Defendant's sentencing was held in March 2003 before the Honorable Lacy H. Thornburg, United States District Judge.[3] Judge Thornburg declined to adopt the drug quantity calculated in the PSR but simply stated that "the evidence is clear in my mind as to the 50 plus grams

---

[3] Judge Thornburg presided over the Defendant's trial as well as his sentencing. Upon Judge Thornburg's retirement in 2009, this matter was reassigned to the undersigned.

4

of actual[4] methamphetamine" that was reasonably foreseeable to the Defendant. [Sent. Tr. at 11]. However, the Court found the Defendant to be a career offender, thus calculating the Guidelines range thereon, rather than based on any drug quantity finding. [Id.]. The Court sentenced the Defendant to a term of 360 months in prison, which was at the low end of the Guidelines range. [Doc. 208: Judgment at 2].

The Defendant has approximately 286 months of credited time in the Bureau of Prisons. [See Doc. 330-1]. The Defendant has incurred only one disciplinary citation during this term of incarceration, has completed approximately 30 educational or work programs, including serving as a mental health companion for other inmates, and has obtained his GED. [Id.].

In May 2020, the Defendant filed his first motion for compassionate release, arguing that his age and underlying health conditions placed him at a higher risk for severe illness from COVID-19, and that his particular vulnerability to the illness was an extraordinary and compelling reason for an immediate sentence reduction to time served. [Doc. 302]. In June 2020, the

---

[4]The jury found the Defendant responsible for more than 50 grams of a methamphetamine mixture, which affected the statutory sentencing range. Judge Thornburg found the Defendant responsible for at least 50 grams of *actual* methamphetamine, which would have affected the calculation of the Guidelines range, but for the Defendant being a career offender.

Court denied the Defendant's motion, concluding that the Defendant had failed to establish an extraordinary and compelling reason for his release, and that consideration of the § 3553(a) factors weighed in favor of his continued incarceration. [Doc. 310].

In August 2021, the Defendant filed a second compassionate release motion. [Doc. 316]. For grounds, the Defendant argued that if he were sentenced today, he would not be classified as a career offender and would receive a shorter sentence. [Id. at 1-3]. In October 2021, this Court denied the Defendant's motion, finding that the Guidelines range that would have applied in the absence of the career offender designation was only one offense level below the career offender offense level and that this difference did not amount to an extraordinary and compelling reason to grant compassionate release. [Doc. 320 at 10]. The Court also found that a reduction in the Defendant's sentence would not be consistent with the sentencing factors described in 18 U.S.C. § 3553(a), including the seriousness of the Defendant's offense and the need to promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. [Id.].

6

The Defendant appealed, and in July 2022, the Fourth Circuit vacated this Court's order. [Doc. 327]. The Fourth Circuit noted that when the Defendant was sentenced, Judge Thornburg did not adopt the drug quantity suggested in the PSR and adopted instead a drug quantity of at least 50 grams of actual methamphetamine, which would have yielded a base offense level two levels lower. [Id. at 3]. Because this Court mistakenly concluded that the offense level disparity would be only one offense level, the Fourth Circuit vacated this Court's Order denying the Defendant's motion for compassionate release. [Id. at 4]. The Fourth Circuit directed this Court on remand to "(a) review the transcript of the 2003 sentencing hearing in terms of the sentencing court's determination as to the drug type and quantity attributable to [the Defendant], particularly as that relates to the jury's finding as reflected in its verdict sheet; and (b) reevaluate the impact of [the Defendant's] career offender designation on the Guidelines range as reconsidered." [Id.].

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling

reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Defendant sufficiently exhausted his administrative remedies with the BOP here, and the Court will therefore proceed to the merits of his request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Although not binding on this Court, see United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020), the commentary to Sentencing Guidelines § 1B1.13 provides specific examples of grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that

8

"substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

In McCoy, the Fourth Circuit held that district courts are not limited to the grounds for compassionate release identified in section 1B1.13 and that the Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 286 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release, considering, for example, the length of time already served, any rehabilitative efforts made during the defendant's time in the Bureau of Prisons, the

9

defendant's prior criminal history, and the defendant's age at the time he committed his offenses. See id. at 284. As subsequent decisions have held, however, "[n]othing in McCoy . . . *requires* the court to reduce a defendant's sentence once the defendant shows that new statutory or case law would have benefitted the defendant, if such law had existed at the time of the defendant's sentencing." United States v. Spencer, 521 F. Supp. 3d 606, 610 (E.D. Va.), aff'd, 853 F. App'x 833 (4th Cir. 2021) (emphasis added). Rather, the Court must decide whether a reduction in sentence is warranted "based on a 'full consideration of the Defendant's individual circumstances.'" Id. (quoting McCoy, 981 F.3d at 286). The defendant bears the burden of establishing that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

On remand, the Defendant asks this Court to consider whether "extraordinary and compelling reasons" are present, warranting compassionate release based on the disparity between the career offender range that he faced at sentencing and the non-career offender range. [Doc. 330 at 2]. The Defendant further argues that his post-sentencing rehabilitations support a sentence of time served. [Id.].

The Court begins its analysis with an examination of the Defendant's career offender designation. To be deemed a career offender, a defendant must be convicted of a controlled substance offense and have at least two prior convictions for controlled substance offenses or violent felonies. U.S.S.G. § 4B1.2. Here, the Defendant was determined to be a career offender based on his conviction for conspiracy to manufacture methamphetamine together with three prior predicate assault convictions.

The Defendant contends that, if he were sentenced today, he would not be designated as a career offender, and that the disparity between the sentence imposed in 2003 and the sentence he would have received in the present day justifies his compassionate release request. The Government does not appear to contest the Defendant's assertion that he would not be considered a career offender if he were sentenced today.[5] Nevertheless, the Government opposes the Defendant's compassionate release request,

---

[5] Under current law, it appears that, had the Defendant been charged with a controlled substance conspiracy today, he would not be designated as a career offender. See United States v. Norman, 935 F.3d 232 (4th Cir. 2019) (holding that an § 846 conspiracy conviction was not a controlled substance offense within the meaning of the Guidelines and can no longer serve as a career offender predicate). However, while the Defendant's count of conviction was a § 846 conspiracy, the facts of the case demonstrate that the Defendant's offense conduct came well within the purview of § 841. Thus, even though the career-offender guidelines would not technically apply, the parameters of that guideline are of some instructive guidance to the Court.

arguing that the Defendant has not identified any extraordinary and compelling reasons for release and that the § 3553(a) factors weigh against any sentence reduction. [Doc. 334].

The first question is what effect the career offender designation had on the Defendant's sentencing. Without a career offender enhancement, the Defendant's criminal history category remains the same: the Defendant had a total of 21 criminal history points, which by itself would establish a criminal history category of VI. The removal of the career offender designation, however, would impact the calculation of his total offense level. As noted, the PSR calculated a base offense level of 34 based on 2.15 kilograms of a methamphetamine mixture; with the addition of a two-level enhancement, this would have resulted in an adjusted offense level of 36. At sentencing, however, Judge Thornburg did not rule based on this determination, but rather found that the Defendant was responsible for at least 50 grams of *actual* methamphetamine.

The Defendant now argues that the drug quantity and type represented by the Government at sentencing and accepted by Judge Thornburg were in

12

error in that such findings contradicted the finding of the jury,[6] and therefore, the Court should now consider a non-career offender Guidelines range using a drug weight of more than 50 grams of a *methamphetamine mixture*, rather than actual methamphetamine. [Doc. 330 at 3]. Using this drug weight, the Defendant argues, would result in base offense level of 24, a total offense level of 26, and a Guidelines range of 120-150 months. The Defendant contends that using this weight would be consistent with the Fourth Circuit's directive on remand for the Court to consider "the jury's finding as reflected in its verdict sheet." [Id. at 4].

The Defendant's argument is misdirected on many fronts. First of all, Judge Thornburg's statement regarding drug type and quantity was not in error, and it does not contradict the jury's finding. The jury made a finding that pertains to the *statutory sentencing* range per Apprendi v. New Jersey, 530 U.S. 466 (2000). Judge Thornburg was expressing his reasoning regarding the calculation of the *Guidelines* range. These are entirely

---

[6] The jury found that the Defendant was responsible for at least 50 grams of a *mixture or substance* containing a detectable amount of methamphetamine. [See Doc. 154]. To the extent that the Defendant claims that Judge Thornburg's finding contradicts this, the Defendant did not object at sentencing, presumably because the career offender designation made this determination irrelevant.

different calculations, using different standards of proof,[7] for entirely different purposes. Most importantly, however, these determinations are not at all inconsistent. The jury found that the Defendant was responsible for more than 50 grams of a methamphetamine mixture, while Judge Thornburg held based on the evidence presented at trial that the Defendant was responsible for more than 50 grams of actual methamphetamine. Either of these could support a specific finding of any amount over 50 grams. They only express a minimum quantity. As such, the Defendant's assertion that there was an error in this calculation (or even a contradiction between these amounts) is entirely unsupported by the record.[8]

Even if Judge Thornburg had committed an error in discerning the Guidelines range or in the sentencing of the Defendant, such would not be cognizable in a compassionate release motion. A petition pursuant to 28 U.S.C. § 2255 is the "exclusive remedy for challenging a federal conviction

---

[7] Preponderance of the evidence, as opposed to beyond a reasonable doubt.

[8] For instance, 1000 grams of a methamphetamine mixture that is 50% pure is the same as 500 grams of actual methamphetamine. Such a circumstance would be entirely consistent with *both* of the findings in question.

14

or sentence after the conclusion of the period for direct appeal."[9] United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022) (internal quotation marks and citation omitted). "Because § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements." Id. As such, the Court will not entertain the Defendant's argument that, were he sentenced today, he would be resentenced based on a different type and quantity of drug than actually found by Judge Thornburg at his original sentencing.

Therefore, addressing the Court of Appeals' directive to "review the transcript of the 2003 sentencing hearing in terms of the sentencing court's determination as to the drug type and quantity attributable to Moody, particularly as that relates to the jury's finding as reflected in its verdict sheet" [Doc. 327 at 4], the Court determines that there is no inconsistency between the jury's verdict and the sentencing court's statement, and that some quantity more than 50 grams of actual methamphetamine was attributable to

---

[9] There is only one exception to this rule: if § 2255 is inadequate or ineffective, the defendant may file a petition for habeas corpus under 28 U.S.C. § 2241 pursuant to the savings clause, 28 U.S.C. § 2255(e).

the Defendant.[10]  That, of course, encompasses more than one base offense level.  Even though Judge Thornburg referred to a base offense level of 32 and an adjusted offense level of 34, he did not make such a conclusion of law because he ultimately found the total offense level to be 37 based on the Defendant's career offender status.  If the Court were to now adopt Judge Thornburg's statement as a finding, a total offense level of 34 and a criminal history category VI would yield a Guidelines range calling for a sentence between 262 and 327 months, absent the Defendant's career offender designation.

The Court next addresses what the Defendant's advisory Guidelines range would be if he were sentenced today, taking into account intervening changes in the law.  The Defendant's argument in this regard implicitly assumes that that he is entitled to the benefit of Amendment 782 as such an intervening change in law.  This, however, is questionable.[11]  Once again,

---

[10] It should be noted that Judge Thornburg did not make a finding of a particular quantity of actual methamphetamine, but only found the quantity to be *at least* 50 grams.  The record reflects that the amount of methamphetamine involved in the Defendant's offenses was *much* higher than 50 grams.  After all, the probation officer set forth a quantity of 2,151.44 grams (mixture) in the PSR.  If sentenced today, and pressed to make an actual determination as to the methamphetamine, it is unlikely that the Defendant would get the benefit of a finding of a mere 50 grams.

[11] However, even if the Defendant were granted the benefit of that Amendment as a "subsequent change in the law," neither the analysis nor the result herein would be any different for the reasons set forth *infra*.

the application of <u>Ferguson</u> comes into play. The Defendant was deemed ineligible for relief under Amendment 782 because of his career offender designation. Is challenging that eligibility a challenge to a sentencing determination that is prohibited in a compassionate release motion? If it is, then the Defendant's Guidelines range would be as calculated above, using Judge Thornburg's statement made at sentencing: 262 to 327 months. The low end of this range is 98 months below the low end of the range employed at the Defendant's sentencing. Considering the length of the Defendant's original Guidelines range, a 98-month disparity alone is not so significant as to constitute an "extraordinary or compelling" reason for compassionate release. <u>See</u> <u>United States v. Guess</u>, 576 F. Supp. 3d 370, 374 (E.D. Va. 2021) (holding that 20-year (240-month) disparity, without more, is not extraordinary and compelling reason for relief). After all, the sentencing disparity in <u>McCoy</u> that could be considered an extraordinary and compelling reason was between a 25-year mandatory consecutive and a 5-year mandatory consecutive. The difference here, to the extent that there may be one, is a small fraction of that. Moreover, the current circumstances concern the application of § 3553(a) analysis rather than the application of any mandatory sentence.

The Defendant, however, calculates differently. He contends that he is entitled to the benefit of Amendment 782, even in the absence of a § 2255 judgment removing his career offender designation, and notwithstanding Ferguson. He contends that the removal of his career offender designation per Norman has the domino effect of making him eligible for relief under Amendment 782. This would yield an advisory Guidelines range of 210 to 262 months (total offense level of 32 and criminal history category VI). This, the Defendant contends, would result in a 150-month differential between the low end of the range that applied at sentencing and the range that would apply today. [Doc. 330 at 4]. Even if the Defendant's argument were correct, the Court does not find this 150-month disparity to be so significant, for the same reasons explained with respect to the 98-month disparity discussed supra. See also Fed. R. Crim. P. 32(i)(3)(B).

Of course, a simple comparison of Guideline ranges would constitute an unpardonably sophomoric approach to considering whether there are "extraordinary and compelling reasons" for compassionate release. The key is an examination of the manner in which a defendant was sentenced compared to how he would likely be sentenced today. That analysis shows that the disparity would be considerably less than the Guideline ranges might

imply. Even if the Defendant were not formally classified as a career offender, his 30-year history of criminal conduct likely would justify an upward departure based on the seriousness of his offenses and the inadequate representation in the resulting Guidelines range of the seriousness of his criminal history or the likelihood of recidivism. See U.S.S.G.§ 4A1.3. The Defendant accrued a total of 21 criminal history points—well above the 13-point threshold for achieving a criminal history category of VI. In addition, several of the Defendant's most serious offenses, including three breaking and entering offenses, did not garner criminal history points because of their age. [See Doc. 287 at ¶¶ 31, 49, 52, 57]. Thus, in light of the Defendant's extraordinary criminal history, it is likely that the Government would seek an upward departure under § 4A1.3, thereby significantly lessening the disparity between the sentence the Defendant originally received and the sentence that would have been imposed without the formal career-offender designation.[12]

In addition, even though the Defendant would not be deemed a career offender today, his offense conduct would still fall squarely within the

---

[12] Using the "climbing the ladder" approach suggested by U.S.S.G. § 4A1.3(a)(4)(B), the Court need only depart three levels to arrive upon the same sentencing range as Judge Thornburg applied.

sentencing considerations expressed in the career offender provisions. This could support an upward variance of some degree. See Beckles v. United States, 580 U.S. 256, 263 (2017) ("[T]he advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range."). After all, in sentencing the Court is called upon to take into account "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). It is undisputed that the Defendant's offense conduct included activities that would violate 21 U.S.C. § 841 and would serve as a career offender predicate (if the prosecutors had been able to predict the holding in Norman). As such, the guidance of the career offender range remains of some significance to the Court in determining an appropriate sentence. Taking this factor together with the § 4A1.3 factor, supra, it is likely that the Defendant would receive a sentence today not too dissimilar to the one he actually received. Accordingly, such disparity does not rise to the level of being an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).

As noted previously, the Defendant has approximately 286 months of credited time in the Bureau of Prisons and is now 69 years old. The

Defendant has incurred only one disciplinary citation during this term of incarceration, has completed approximately 30 educational or work programs, including serving as a mental health companion for other inmates, and has obtained his GED. While the Defendant's efforts at rehabilitation are commendable, the number of work assignments and educational courses completed by the Defendant are not particularly remarkable, especially given the length of time he has been incarcerated. Further, given the Defendant's persistent criminal misconduct through three decades of his life, his relatively advanced age of 69 does not necessarily suggest that he is no longer a risk of offending again, as it might with others.

Having carefully considered the grounds asserted by the Defendant, the Court concludes that none of these grounds, either singly or in combination, constitute an extraordinary and compelling reason for a sentence reduction in this case.

Even if the Defendant could establish an extraordinary and compelling reason, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

The Defendant argues that his sentence creates unwarranted sentence disparities because his co-defendant, who held an aggravated role within the conspiracy, received a lower sentence. [See Doc. 330 at 9-10]. However, the Defendant's co-defendant, Walter West, was subject to a criminal history category of II when he was sentenced and did not, therefore, have a criminal history warranting the kind of lengthy sentence that the Defendant received.[13] [See Doc. 334: West Sentencing Tr. at 23-24].

Here, the Defendant's offense conduct was serious, presenting a danger to the public and to the environment and involving a large quantity of methamphetamine. Further, the Defendant has an extensive history of persistent criminal misconduct spanning three decades and resulting in a criminal history category of VI even without the application of the career offender enhancement. Considering the nature and circumstances of the Defendant's offense, the Defendant's history and characteristics, the need for deterrence (general, as well as specific), the need to protect the public, and the need for just punishment, the Court concludes that the § 3553(a)

---

[13] Co-defendant West also did not come before this Court with "history and characteristics" warranting career offender status or something closely akin thereto.

factors weigh in favor of denying the Defendant any reduction in his sentence.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that, in any event, analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration.

**IT IS, THEREFORE, ORDERED** that the Defendant's Second *Pro Se* Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 316], as supplemented by counsel [Docs. 330, 335], is **DENIED**.

**IT IS SO ORDERED.**

Signed: March 20, 2023

Martin Reidinger
Chief United States District Judge

23